CANNON V. TCRA 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 






NO. 3-92-091-CV






LINDY CANNON, GEOFFREY RICH AND JACK BRYANT,



 APPELLANTS



vs.






TRAVIS COUNTY RENT ACCOUNT, A TEXAS GENERAL PARTNERSHIP,


DALE WATKINS, BOYD RAY WATKINS, GUY SMITH PETTIGREW, 


LLOYD D. SMITH AND THE ESTATE OF KEITH PETTIGREW,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 439,560, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 





 Lindy Cannon, Geoffrey Rich, and Jack Bryant raise three points of error in their
appeal from an adverse judgment rendered by the trial court in their suit for breach of fiduciary
duty against appellees Travis County Rent Account (TCRA), Billy Dale Watkins, Boyd Ray
Watkins, Lloyd D. Smith, and the Estate of Keith Pettigrew. We will affirm the judgment.

 In 1966, appellees formed Dale Auto Parts, Inc. (DAP), whose assets in time
included four auto parts stores and the good will associated with the name "Dale's Auto Parts." 
Appellants Cannon and Bryant were managers of two of these stores. In 1975, Dale's Quality
Auto Parts, Ltd. ("Quality"), was formed to be the owner of additional stores bearing the Dale's
Auto Parts name. Cannon and Bryant became limited partners of Quality, each owning a 10%
interest, while appellees formed a separate partnership, TCRA, which as general partner owned
60% of Quality. The good will associated with the original stores' name remained with DAP.

 The new stores owned by Quality were required to purchase some of their
inventory at manufacturers' suggested jobber prices from Austin Automotive Warehouse, Inc.
(AAW), a company in which appellees had a significant financial interest. The stores also had
to purchase all remaining inventory from vendors with which the original stores did business; as
a result, AAW received rebates for its own purchases from these vendors for the new business
it had provided them. Appellees subsequently required the new stores to buy inventory from
D&G Warehouse, Inc. (D&G), another company owned and controlled by appellees.

 In 1981, Dale's Auto Center, Ltd. (DAC), was formed with TCRA as the general
partner and Cannon, Bryant, and Rich as limited partners. DAC owned and operated additional
stores and service centers with the Dale's name and faced the same requirements regarding
inventory purchases as Quality. Both Quality and DAC paid TCRA management fees as their
general partner. 

 TCRA, Quality, and DAC all borrowed money from First City National Bank of
Austin. First City required a consolidation and cross-collateralization of these loans. As a result,
appellants' limited interests in Quality and DAC were pledged as collateral for TCRA's loans,
although appellants never signed an agreement acknowledging this arrangement.

 Bryant sold all of his interests in Quality and DAC before this suit was filed. 
Cannon sold his interest in DAC but retained his interest in Quality. Rich bought a limited
interest in Quality and retained his interest in DAC.

 After this suit commenced, the assets of Quality and DAC were sold to DAP, and
Cannon and Rich received interests in DAP proportionate to their original interests in the
predecessor companies.

 Appellants sued appellees for breach of their fiduciary duty as managing partner
of Quality and DAC. Appellants alleged five distinct breaches: (1) AAW's and D&G's charging
of jobber prices to Quality and DAC at costs above those offered by "discount" warehouses;
(2) AAW's receiving of rebates from vendors that supplied inventory to Quality and DAC, which
was deemed a "kickback" scheme; (3) TCRA's charging of excessive management fees; (4) the
unauthorized pledging of appellants' partnership interests as collateral for TCRA's loans; and (5)
the converting of Cannon's and Rich's interests from Quality and DAC to interests in DAP.

 In a single issue, the trial court asked the jury to find the amount of damages
sustained by Cannon, Bryant, and Rich resulting from each of the fiduciary duties appellees
breached. The jury was informed it could award damages only if (1) it found appellees' acts
constituted breaches and (2) the breaches were not excused. The jury was instructed on four legal
excuses: acquiescence, waiver, ratification, and accord and satisfaction. The jury failed to find
any damages for any alleged breach, and the trial court rendered a take-nothing judgment in favor
of appellees.

 Appellants' first point of error asserts the trial court mistakenly allowed testimony
regarding oral amendments that contradicted the written partnership agreements in violation of the
parol evidence rule. Appellants fail to specify where such testimony occurred in the record. 
Apparently, appellants refer to several instances when appellees asked Dale Watkins, among other
witnesses, about appellants' knowledge, before filing this suit, of the jobber prices charged by
AAW, the rebates, and the management fees. Appellants claim this evidence was introduced to
support appellees' theory that oral agreements varied the written terms of Quality's and DAC's
partnership agreements and allowed appellees to commit the acts alleged to be breaches of
fiduciary duty.

 Appellants complained about alleged breaches of fiduciary duties, not breach of a
specific term in the partnership agreement. Appellees introduced evidence of appellants'
knowledge of the alleged breaches to prove their affirmative defenses of acquiescence, waiver,
ratification, and accord and satisfaction, not to prove an oral amendment in a breach of contract
case. (1) Appellants have cited no authority for the proposition that the parol evidence rule applies
in a case involving alleged breaches of fiduciary duty.

 Furthermore, appellants failed to object when evidence of appellants' knowledge
was first admitted by Cannon's testimony upon cross-examination. The trial court overruled
appellants' objections when subsequent witnesses were asked about such knowledge, noting
Cannon's admission had opened the door to such testimony. Appellants waived error when the
earlier testimony was introduced without objection. Tex. R. App. P. 52(a); Bushell v. Dean, 803
S.W.2d 711, 712 (Tex. 1991). We overrule appellants' first point.

 Appellants' second point of error complains that the evidence was legally and
factually insufficient to support the jury's failure to find any damages. Appellants' third point
complains there was no evidence to support the trial court's submission of appellees' affirmative
defenses that constituted legal excuses to any breaches of fiduciary duty. (2) Appellants concede that
in order for this Court to reverse the judgment below, the evidence must be insufficient to support
any of three possible findings by the jury: (1) no breaches of duty occurred; (2) the breaches were
legally excused; and (3) no damages were caused by the breaches.

 Appellants seek to overcome the jury's failure to find damages as a matter of law. 
We must first consider only the evidence and inferences tending to support the answer of the trier
of fact and disregard all evidence to the contrary. If there is no evidence to support the answer,
then we examine the entire record to see if the contrary proposition is established as a matter of
law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); Holley v. Watts, 629
S.W.2d 694, 696 (Tex. 1982). Regarding appellants' factual sufficiency challenge, we must
consider and weigh all the evidence and should set aside the jury's answer only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex. 1951).

 The trial court submitted the following definitions for defenses excusing any breach
of duty:



You are instructed that "ACQUIESCENCE" means that a party, with full
knowledge of the terms of an agreement or arrangement, fails to object to the
terms, and by conduct and/or silence indicates an acceptance of the terms of the
agreement or arrangement.


You are instructed that "WAIVER" is the intentional relinquishment of a known
right.


You are instructed that "RATIFICATION" is the approval by action, word or
conduct, of a prior act, with the intention of giving validity to such prior act. 
Ratification may be expressed or implied. Implied ratification occurs when one
continues to accept benefits after one has knowledge of the facts. An agreement
or an arrangement is ratified when a party to that agreement conducts himself in
such a manner that recognizes the validity of the agreement or is inconsistent with
an intent to avoid the agreement at a time when the party knew of the terms of the
agreement.


"ACCORD AND SATISFACTION" means that failure to comply with an
agreement is excused if a different performance was accepted as full satisfaction
of performance of the original obligations of the agreement.



Appellants made no objection to the wording of these definitions. Therefore, we review the
evidence that would support a jury finding that the excuses defined above were available to
appellees.

 Cannon, Bryant, and Rich all testified that they knew the stores owned by Quality
and DAC were expected to buy inventory at jobber prices from AAW and D&G. Testimony
shows that the limited partners also knew about the existence of the rebates and the amount
charged by TCRA for its management fees. The record indicates this knowledge existed long
before the appellants filed suit. The evidence also shows appellants continued to invest in Quality
and DAC and accept benefits from their partnership interests. Finally, the record indicates that
Cannon and Bryant accepted a buyout of some or all of their interests in the two companies. Even
assuming proof of any breaches of fiduciary duty, we hold there is sufficient evidence to support
the jury's verdict excusing any breaches involving the inventory purchases from AAW and D&G,
AAW's receipt of rebates from other vendors for sales to Quality and DAC, and TCRA's charging
of managing fees as general partner of the two companies.

 Furthermore, we hold the evidence supports the jury's failure to find damages
caused by these three acts. Appellants produced no direct evidence of the money they lost or the
profits appellees gained as a result of the jobber sales or the rebates, (3) nor did they prove the
management fees, which were authorized by the partnership agreement, were unreasonably high.

 We further hold the evidence supports the jury's failure to find any damages
resulting from the remaining two alleged breaches. Appellants introduced no evidence of damages
caused by TCRA's use of limited partnership assets as collateral for the consolidated note with
First City. No property was foreclosed upon or assets seized, and no evidence exists that any
payments on the note were missed. Appellants suggested at oral argument before this court that
damages should be awarded as a matter of law when partnership assets are pledged, but they cite
no authority for this proposition.

 The jury heard conflicting evidence on damages caused by the sale of Quality's and
DAC's assets to DAP. Appellants presented expert testimony that Quality was worth $3 million
before the sale. Appellees' expert testimony, however, shows that no difference existed between
the value of appellants' interests before and after the sale, because the value of the stores'
inventory remained unchanged. Appellants testified they believed their interests were worthless
after the sale because they could not readily sell these interests, but they presented no evidence
that their interests were marketable before the sale; therefore, the jury was entitled to disregard
the speculative testimony that the after-sale interests were worthless.

 As we hold the evidence was sufficient to support the jury's failure to find damages
for any of the alleged breaches of fiduciary duty, we overrule appellants' second and third points
of error. Accordingly, we affirm the trial court's judgment. 



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: March 17, 1993 

[Do Not Publish]

1.   The testimony concerned the appellants' knowledge of alleged breaches after the
partnership agreement was signed. The parol evidence rule does not apply to agreements
subsequent to the written agreement. Lakeway Co. v. Leon Howard Inc., 585 S.W.2d 660, 662
(Tex. 1979). It thus would not apply even if appellees were attempting to prove subsequent oral
amendments.
2.   In appellants' third point, they also argue that any ratification or acquiescence must
be in writing. Appellants' only objection at trial to the jury charge was that there was no
evidence supporting any of the excuses. Therefore, they have waived any other grounds that
might constitute error. Tex. R. Civ. P. 272.
3.   Cannon testified that he believed Quality and DAC would have been more profitable
if the companies had bought from discount warehouses and vendors who did not give rebates. 
The jury was not required to accept this speculative testimony. Moreover, appellees
presented conflicting evidence that the "controlled distribution" system in operation actually
made all of the Dale's stores more competitive, eliminating many charges that discount
warehouses required and providing more services, too.